Good morning, your honors. May it please the court, my name is Paula Nutteri and I represent the defendant's appellant Jake Hawn Walters. Your honors, it's very clear under both federal and state law that not all murders are the same. It's simply the state of mind of the defendant is always an issue in determining whether murder was first degree, second degree, or voluntary manslaughter. The only issue in this case, the parties were pretty much in agreement about everything in this case, that there was a murder. The only issue was whether there was malice. Whether Mr. Walters, what his intent was, what his state of mind was. Malice is very clear in United States v. Whiteside. Judge Crotty recently recognized that malice is not satisfied simply by killing with an intentional and reckless mental state. It specifically requires committing the wrongful act without justification, excuse, or mitigation. And in this case, the defense, there were two theories, two things going on, two defense theories that the government failed to prove malice beyond a reasonable doubt. The first was that clearly Mr. Walters was in the briefly about that. The second was the notion that there is a well-recognized imperfect self-defense which has been recognized in other circuits, which we do believe is important for the court to consider here because when, there is not a lot of direction in the law. There's a lot of going back. It was very difficult in this case in terms of the different standards. But what's most important is when your honors consider that the defining characteristic of voluntary manslaughter is intent without malice, not the heat of passion. And why that is important is because heat of passion encompasses, according to the SANS jury instructions, model federal... Here, the defendant left the scene, went away, came back six minutes later with a gun. Things had cooled down apparently. And then he shoots the other guy six times, including when the other guy is lying on the ground. So was it clearly erroneous for the trial court to find as factual matter that there was no heat of passion here? Your honor, I think it was. I think that this case was not just what your honor described. This case was more than that. I'll refer to the victim here as Bully because that was his name throughout the trial. That's how he was referenced. Bully not only was the first aggressor. He robbed my client, Mr. Walters. He beat him. And then he proceeded to threaten his life. The evidence was undisputed that Bully was a member of the Bloods gang. And during the altercation, there came a time when things changed. And he made the motion of a gun. He pointed at my client and he said, you're basically dead. And he got on his phone and he continued to be on his phone. And the was clear from my client's point of view, and there were other standers by, that he got on his phone and he called others. And this was an ongoing death threat. During the video, my client... Would it have been a heat of passion if your client had come back an hour later or a day later and shot him because he was under this threat? I think that would have been very different. I think the fact that this was only... Why though? I mean, he still had to go away, find his gun and come back. And heat of passion seems to me to be dissipated by the deliberation that is required to undertake those acts. And that's why I'm pressing you. It wasn't all one gesture. There were intervening actions that he undertook. And Your Honor, there was a... In terms of what he sincerely believed was an issue, and certainly it's an issue in terms of imperfect self-defense. And there were two experts who testified at length, who met with my clients, who rendered reports and both... You could have subjectively believed that an hour later or a day later as well. I mean, if a threat like that had been made and gangs were involved and so on, why wouldn't your argument be equally as valid for someone who came back a day later? I understand the court and the truth that imperfect self-defense basically says that if a defendant, his belief is sincere, even though it's unreasonable, that still negates the mens rea that's required to establish first degree murder. So it is true that the rationale for the case law, which supports imperfect self-defense, says that yes, if a defendant unreasonably, but sincerely... You'd say it's not maybe heat of passion then, but... Well, then I think it might... Then I think that I would have... I think it would fall into a different category and perhaps there that would be perhaps an insanity defense. But this was never about insanity. I think that part of the confusion in the court's decision is the focus on the fact that Mr. Walters was aware of his actions. No one ever disputed the fact that he was aware of his actions and that he was able to control himself. It was not an insanity defense. And what's troubling is the courts, in terms of an erroneous decision, the courts says that on the appendix page 489, a defendant's actions are malicious when shots are fired with the intent to do harm. This does not contemplate the subjective, the mind, the state of mind of a defendant. I mean, you can't just conclude that a defendant's actions are malicious when shots are fired because certainly that's the case in every murder, in every murder where someone is always... The district court found that the defendant did not believe, whether it was reasonable or unreasonable, it doesn't matter. He did not believe that he was in danger of death or great bodily harm. And what is troubling about that finding, Your Honor, is it's completely contradicted by the two experts who testified. One expert testified... The video shows in the video, yes, he looks like someone who's calm, cool, collected. He doesn't look like someone who's in a rage of passion. And I think that that's why it's important for the consideration of the expert testimony in terms of what his state of mind was. And this goes towards the sincerity of his belief, the fact that he had been... The district court wasn't obliged to accept the consider all the evidence, including the video, the stipulated facts. What I'm troubled by is that the district court did not accurately consider the testimony of the experts and did not... One, the government's own expert testified in her concluding report, and that's government 602, that she could not be certain that the defendant was afraid and that his belief was insincere, that it could have been possible that he was... That he did fear for his life. And that the only thing the court relied upon was her interpretation. Your Honors, Judge Nathan respectfully, her interpretation of the video. And much like counsel who just appeared before me, the standard is that if evidence can be then that's a reasonable doubt. And the fact remains that the credibility of Mr. Walters and his state of mind, there's simply no dispute that he was not the first aggressor, that he was violently beaten by a bully, that bully was in a gang, that bully was in and out of prison. And these are all things that Mr. Walters knew, and that there was an ongoing death threat. And in these gang cases, more and more and more we're getting these gang cases. And the reality of life on the streets, this was a street where Mr. Walters had been shot twice before. He was victimized. That was not disputed. He had witnessed his own friends. There were at least five instances where friends of his had been shot on this very street. Bully was a gang member. He called, I mean, this is, if you could think of an analogy, if you're threatened on the street by the head of the Colombo crime family, certainly the threat is ongoing. Mr. Walters, that street was where he lived. He stayed. He was homeless. I mean, this wasn't a self-defense argument. No, Your Honor, it's not self-defense because, it was not self-defense because there was imperfect self-defense. And that seemed to make more sense. All right, you're, you have some time for rebuttal. We'll hear from the government. May it please the court. My name is Matthew LaRoche. I represent the government in this appeal, and I represented the government at trial below. I'd like to start where Ms. Notari left off a second ago, and that's on the standard on appeal. We disagree with her characterization of the standard. It's not whether someone could potentially find that this person was not guilty. The standard is whether any rational trier of fact could have determined, based on the evidence, that this person was guilty beyond a reasonable doubt. This court should only overturn that determination if the evidence is so meager or non-existent that no rational trier of fact could have determined that this person was guilty. And here, as Judge Nathan found in her very thorough opinion, after she found him guilty, the facts firmly established that Mr. Walters acted with malice. Those facts were largely undisputed. They included very clear video evidence, which captured virtually all of the relevant acts in this case, which included the fistfight between the two individuals, and included Mr. Walters leaving for approximately six minutes, going to get a firearm in a building where he stored it, coming immediately back to the scene of the crime, and essentially sneaking up on Mr. Moore, sneaking between two cars, approaching him while Mr. Moore had a cell phone in his hand, and without any provocation whatsoever. As Judge Nathan said, execution style. Shot him numerous times until he fell to the ground, continued to shoot him while he was on the ground. Those facts are entirely consistent with the finding of malice. There is nothing else in the defense counsel have pointed to that would support an alternate determination in this case. Defense counsels raised two arguments, one relating to heat of passion, one relating to imperfect self-defense. I'd submit that Judge Nathan thoroughly considered both of those arguments and rejected them. And she did so by considering all of the evidence, drawing inferences in the government's favor, as the court must on appeal. The defendant's argument simply does not hold water. So unless the court has any additional questions for the government, we'll rest on our submission. Thank you. Your Honor, Mr. LaRoche, his argument just ignores the reality of Mr. Walters, and certainly the life of a defendant and what happens in this particular case matters. Mr. Walters was, these were not two equals. Mr. Walters had no prior record. Mr. Walters, all of the witnesses said that this was out of character, that he was a peaceful person, and that he was self-medicating using marijuana because he had post-traumatic stress disorder. There was a little bit of a dispute. This was not a battle of the experts. Both experts agreed that he had a fear-trauma-based condition based on the fact that he had been shot before and that he was using alcohol and self-medicating and selling marijuana, a $10 bag of marijuana. There was no premeditation. This all happened because Bully literally started the fight and robbed him and refused to make payments on the $10 that Mr. Walters was owed. The fight ensued, and the fight in total was 11 minutes. That includes the six minutes. During that altercation, Mr. Walters explained that, based on his living on the streets, that he had to stand up for during the fight, that things changed, and that Bully held out his gun and threatened his life. Mr. Walters and all of the people in the vicinity believed that this was a threat of death. George Moore testified. He was the government's witness, the only eyewitness. He corroborated the fact that these two men were not the same, that Bully was a violent person. He stayed away from him because he was a troublemaker and he never wanted problems, and that Mr. Walters was a different kind of person. When Bully threatened Mr. Walters' life, Mr. Walters believed that this was an imminent threat of death. When he went and got his gun, it was simply to protect himself, not only from Bully, but he was a gang member. He called on his phone that was in the video, and it was undisputed that he was calling someone on the phone, and Mr. Walters believed that he, because he heard him say, bring me a gun. I'm going to spray everyone up on the street. Mr. Walters' video statement to the police, he said it at the time when he did not have the opportunity to meet with counsel. He self-surrendered. He turned himself in to the prosecutors and to law enforcement, was exactly corroborated by the video, despite the fact that he had never even seen the video or consulted with his lawyers. It is a tragedy, a tragedy that this man has led a difficult life of hardship and that he was brutalized, that he was brutalized by Bully, who was in and out of prison, and none of that seems to matter to anybody. The fact that he went and got a gun... I don't know that that's an appropriate comment. I'm sorry, I'm sorry. You're out of time. Okay, I respectfully got too much into, but I'm sorry for that. We will reserve decision.